IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MONIQUE L. HOLLIDAY,

    Plaintiff,

    v.

BERNARD THOMAS, et al.,

    Defendants.

Case No. 2:21-cv-02230-HLT-ADM

**MEMORANDUM AND ORDER**

    Plaintiff Monique Holliday has sued Defendants Bernard Thomas and Progressive Northwestern Insurance Company for damages arising out of a car accident. Thomas was the other driver. Progressive is Holliday's insurance company. Holliday seeks uninsured-motorist coverage from Progressive on grounds that Thomas's vehicle was an uninsured motor vehicle under the Progressive policy. Holliday sues Thomas for negligence and Progressive for breach of contract and vexatious refusal to pay.

    Progressive moves for summary judgment on all claims against it on grounds that Thomas was insured at the time of the accident and was therefore not an uninsured motorist or operator of an uninsured motor vehicle under the Progressive policy. Doc. 9. Because Progressive has failed to show that another policy provides coverage to Thomas for the accident, the Court denies the motion.

**I.     BACKGROUND**

    The Court considers the following undisputed facts. In 2018, Progressive issued an insurance policy for a 2002 Toyota Camry. That policy included uninsured-motorist coverage. The uninsured-motorist provision states:

> If **you** pay the premium for this coverage, **we** will pay for damages . . . that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** . . . because of **bodily injury**:
>
> 1. sustained by an **insured person**;
> 2. caused by an accident; and
> 3. arising out of the ownership, maintenance or use of an **uninsured motor vehicle** . . . .

Doc. 9-2 at 23.[1] An "insured person" is defined as "any person while operating a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**." *Id.* An "uninsured motor vehicle" is "a land motor vehicle or trailer of any type: a. to which no bodily injury liability bond or policy applies at the time of the accident . . . ." *Id.* at 24.

On July 14, 2018, Holliday and Thomas were in a car accident while Holliday was driving the 2002 Toyota Camry listed on the Progressive policy. Holliday alleges that Thomas's negligence caused the accident and that she sustained injuries and damages.

At the time of the accident, Thomas had an automobile bodily injury policy with Dairyland Insurance Company. The Dairyland policy listed Thomas as the insured and had a bodily injury coverage limit of $25,000 for each person and $50,000 for each accident. The Dairyland policy listed a 2007 Chevy Aveo on the policy. The Dairyland policy included the following provision:

> "Your insured car" means all of the following.
>
> (A) Any car described on your Declarations Page, for which a premium charge is shown.
>
> (B) Any car that permanently replaces a car described on your Declarations Page during the policy period. With respect to coverage under Parts I, II and III of this policy, the replacement car will be afforded the same coverage as the car it replaces. Coverage will apply as of the date you acquire the car, but only if you ask us to insure it within fourteen (14) days of its acquisition. Coverage under Part IV and other optional coverages will apply to the

---

[1] The Court includes the bolding used throughout the insurance policies unless otherwise noted.

>   replacement car as of the date you acquire the car only if you expressly ask for it within three (3) days of its acquisition. We must also agree to provide the coverage before it will apply. In all other cases, any coverage you request will apply no earlier than the date and time you contact us to request it and we agree.
>
>   (C) Any additional car you acquire ownership of during the policy period that does not permanently replace a car described on your Declarations Page, but only if we insure all other cars you own. With respect to coverage under Parts I, II and III of this policy, the additional car will be afforded the same coverage as any other car described on your Declarations Page. Coverage will apply as of the date you acquire the car, but only if you ask us within fourteen (14) days of its acquisition. Coverage under Part IV and other optional coverages will apply to the additional car as of the date you acquire the car only if you expressly ask for it within three (3) days of its acquisition. We must also agree to provide the coverage before it will apply. In all other cases, any coverage you request will apply no earlier than the date and time you contact us to request it and we agree.
>
>   (D) Any car not owned by you while being used temporarily by you or a relative. The use must be with the owner's permission. The car must be a substitute for a vehicle described on your Declarations Page which is withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. This provision applies only to coverages provided in Parts I, II and III of this policy.

*Id.* at 58-59 (bolding omitted). Thomas was driving a 2008 Chevy Tahoe at the time of the accident.

## II.   STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567,

569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.   ANALYSIS

Progressive moves for summary judgment on Holliday's claims on grounds that she is not entitled to uninsured-motorist coverage under the Progressive policy because Thomas was covered by the Dairyland policy. Holliday argues that Progressive has not put forth any evidence that the 2008 Chevy Tahoe—the car Thomas was driving at the time of the accident—was covered by the Dairyland policy.

In Kansas, insurance policies are contracts, and their interpretation is a question of law. *BancInsure, Inc. v. F.D.I.C.*, 796 F.3d 1226, 1233 (10th Cir. 2015). Courts should "consider the policy as a whole, rather than viewing provisions in isolation." *Id.* Where the language is unambiguous, a court should enforce the contract as made. *Id.*

The Progressive policy includes uninsured-motorist coverage under the following terms:

> If **you** pay the premium for this coverage, **we** will pay for damages . . . that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** . . . because of **bodily injury**:
>
> 1. sustained by an **insured person**;
> 2. caused by an accident; and
> 3. arising out of the ownership, maintenance or use of an **uninsured motor vehicle** . . . .

Doc. 9-2 at 23. Progressive does not dispute that Holliday is an "insured person" under the Progressive policy. Doc. 10 at 7. Nor does Progressive dispute for purposes of this motion that Holliday sustained bodily injury arising out of the accident.

4

The parties do dispute whether the accident arises out of the use of an "uninsured motor vehicle," namely the 2008 Chevy Tahoe. The Progressive policy defines "uninsured motor vehicle" in relevant part as "a land motor vehicle or trailer of any type: a. to which no bodily injury liability bond or policy applies at the time of the accident . . . ." Doc. 9-2 at 24. The only known policy that could have covered Thomas's use of the 2008 Chevy Tahoe is the Dairyland policy. Thus the Court must look to the language of that policy to determine whether it applies and whether the 2008 Chevy Tahoe was an "uninsured motor vehicle" (i.e., a vehicle to which no liability policy applied at the time of the accident).

Progressive argues that the Dairyland policy covers "damages for which any **insured person** is legally liable because of **bodily injury** and/or **property damage** caused by a **car accident**. The **car accident** must have arisen out of the ownership, upkeep or use of a **car**." Doc. 9-2 at 59. Because Thomas would be considered the "insured person" under the Dairyland policy, and because he is allegedly legally liable for Holliday's injuries and damages arising from the accident, Progressive argues that the Dairyland policy affords Thomas liability coverage for his use of any vehicle, including the 2008 Chevy Tahoe.

But this provision in the Dairyland policy cannot be read in isolation. In addition to offering coverage, the Dairyland policy also has exclusions including:

> **Bodily injury** or **property damage** arising out of the ownership, upkeep, or use of any vehicle other than **your insured car**. This exclusion applies only if the vehicle is owned by, or furnished or available for regular use by **you** or a **relative**.

*Id.* at 60. "Your insured car" is defined as

> (A) Any car described on your Declarations Page, for which a premium charge is shown.
>
> (B) Any car that permanently replaces a car described on your Declarations Page during the policy period. With respect to coverage under Parts I, II and III of this policy, the replacement car

5

> will be afforded the same coverage as the car it replaces. Coverage will apply as of the date you acquire the car, but only if you ask us to insure it within fourteen (14) days of its acquisition. Coverage under Part IV and other optional coverages will apply to the replacement car as of the date you acquire the car only if you expressly ask for it within three (3) days of its acquisition. We must also agree to provide the coverage before it will apply. In all other cases, any coverage you request will apply no earlier than the date and time you contact us to request it and we agree.
>
> (C) Any additional car you acquire ownership of during the policy period that does not permanently replace a car described on your Declarations Page, but only if we insure all other cars you own. With respect to coverage under Parts I, II and III of this policy, the additional car will be afforded the same coverage as any other car described on your Declarations Page. Coverage will apply as of the date you acquire the car, but only if you ask us within fourteen (14) days of its acquisition. Coverage under Part IV and other optional coverages will apply to the additional car as of the date you acquire the car only if you expressly ask for it within three (3) days of its acquisition. We must also agree to provide the coverage before it will apply. In all other cases, any coverage you request will apply no earlier than the date and time you contact us to request it and we agree.
>
> (D) Any car not owned by you while being used temporarily by you or a relative. The use must be with the owner's permission. The car must be a substitute for a vehicle described on your Declarations Page which is withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. This provision applies only to coverages provided in Parts I, II and III of this policy.

*Id.* at 58-59 (bolding omitted).

Here, it is undisputed that the Dairyland policy listed a 2007 Chevy Aveo. It is also undisputed that Thomas was driving a 2008 Chevy Tahoe at the time of the accident. Under the coverage and exclusion provisions of the Dairyland policy quoted above, Thomas's liability for use of the 2008 Chevy Tahoe may be covered. But it may not be. There are no facts in the record about who owns the 2008 Chevy Tahoe, why or how Thomas came to be driving it, whether it replaced the 2007 Chevy Aveo, whether Thomas requested coverage for it, or any other facts that

6

would allow the Court to determine whether the Dairyland policy's exclusion regarding "use of any vehicle other than **your insured car**" may apply. *Id.* at 60.

The Court agrees with Progressive that Holliday has done little to show a material issue of fact regarding the application of the exclusion other than citing the definition of "your insured car" and generally arguing that Thomas's use of the 2008 Chevy Tahoe is not covered by the Dairyland policy. But Progressive has likewise failed in its initial burden to set forth undisputed facts showing the converse—that the Dairyland policy <u>does</u> cover Thomas's use of the 2008 Chevy Tahoe. Indeed, Progressive's motion just points to the existence of the Dairyland policy and asks for summary judgment on grounds that Thomas had a policy without analyzing whether the 2008 Chevy Tahoe is covered under that policy.

In its reply brief, Progressive relies on *Richert v. McHone* to argue that Holliday's "unsupported theory of [uninsured-motorist] coverage has already been expressly rejected by Kansas Courts." Doc. 23 at 7. In *Richert*, the Kansas Court of Appeals rejected a claim for uninsured-motorist benefits on a theory that, although the tortfeasor was covered by a policy, the vehicle involved did not have a policy that specifically applied to it. 135 P.3d 767, 770-71 (Kan. Ct. App. 2006). But in *Richert*, the court specifically noted that the tortfeasor's "policy extended [the tortfeasor's] bodily injury liability protection to cover his operation and use of the Blazer." *Id.* at 768. Here, in contrast, the Court has been given no facts that would allow it to conclude one way or the other whether the Dairyland policy covered Thomas's operation and use of the 2008 Chevy Tahoe. Without knowing that, the Court cannot conclude that Holliday is prohibited from claiming uninsured-motorist benefits under the Progressive policy.

Ultimately, Holliday will have to establish that the Dairyland policy did not cover Thomas's use of the 2008 Chevy Tahoe to proceed on her claims against Progressive. Whether she

will be able to do so remains to be seen. But on the current record, Progressive has not demonstrated that she will definitively be <u>unable</u> to do so. Accordingly, Progressive's motion for summary judgment is denied.

## IV.     CONCLUSION

THE COURT THEREFORE ORDERS that Defendant Progressive's Motion for Summary Judgment (Doc. 9) is DENIED.

IT IS SO ORDERED.

Dated: August 9, 2021                    /s/ *Holly L. Teeter*
                                         HOLLY L. TEETER
                                         UNITED STATES DISTRICT JUDGE